UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MITEK CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | 18 C 1453 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| BRAD DIEDRICH and AFCO, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**M**EMORANDUM **O**PINION AND **O**RDER

Mitek Corporation sued Brad Diedrich, its former employee, and AFCO, Inc., his current employer, alleging that Diedrich breached his employment contract with Mitek, that AFCO tortiously interfered with that contract, and that both misappropriated Mitek's trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, and Illinois law. Doc. 1. Diedrich and AFCO separately move to dismiss under Civil Rule 12(b). Docs. 19, 23. The motions are granted—AFCO is dismissed under Rule 12(b)(2) for want of personal jurisdiction, and Diedrich is dismissed under Rule 12(b)(7) given Mitek's forfeiture of any opposition to Defendants' argument under Rule 19 that AFCO is a necessary party without which the case cannot proceed in equity and good conscience.

**Background**

In resolving a Rule 12(b)(2) motion, the court considers the complaint's well-pleaded allegations and the evidentiary materials submitted by both sides. No party has requested an evidentiary hearing, so the court must accept Mitek's factual averments and resolve all factual disputes in its favor. *See Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012) ("[W]here, as here, the issue [of personal jurisdiction] is raised on a motion to dismiss, the plaintiff need only

1

make a prima facie showing of jurisdictional facts. We therefore accept as true all well-pleaded facts alleged in the complaint and resolve any factual disputes … in favor of the plaintiff.") (citation omitted); *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782-83 (7th Cir. 2003). The facts are set forth as favorably to Mitek as those materials allow. *See Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 682 (7th Cir. 2014). In setting forth the facts at this stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

Diedrich, a Wisconsin resident, worked from May 2003 through September 2017 for Mitek, an Illinois corporation that designs, manufactures, engineers, and sells audio equipment. Doc. 1 at ¶¶ 1-2, 4, 43. Diedrich split his working time between his home in Wisconsin and Mitek's office in Illinois. *Id.* at ¶ 43. In 2007, Mitek promoted Diedrich to Senior Engineering Manager. *Id.* at ¶¶ 4, 14.

Over time, Diedrich learned Mitek trade secrets and confidential information "[p]ursuant to his job duties." *Id.* at ¶ 26. In 2016, Diedrich signed a contract promising not to reveal the secrets and information. *Id.* at ¶¶ 17-18; Doc. 1-2 at 2-3. The contract has an Illinois choice-of-law clause and includes non-competition and non-solicitation covenants. Doc. 1 at ¶¶ 18-19; Doc. 1-2 at 3-4.

In April 2017, Diedrich accompanied Mitek President and CEO John Ivey to a Hong Kong electronics fair at which one of Mitek's business partners, EVR, proposed to sell Mitek a digital signal processing ("DSP") amplifier. Doc. 1 at ¶ 32. Ivey asked EVR to send Diedrich information regarding the proposal, but Diedrich never "evaluated or put his work efforts into the proposal on behalf of Mitek." *Id.* at ¶¶ 32-33. Soon after the fair, EVR agreed to work with a Mitek division called MTX to develop the DSP amplifier. *Id.* at ¶¶ 2-3, 33. After executing a

Mutual Confidentiality Agreement with Mitek, EVR sent an "MTX prototype/sample of a new EVR DSP amplifier" to Mitek's Arizona office. *Id*. at ¶ 33. Diedrich "viewed and examined" the prototype in Arizona. *Ibid*.

In September 2017, Diedrich resigned from Mitek and accepted a "nearly identical position" with AFCO, a Tennessee company that, like Mitek, designs, manufactures, engineers, and sells audio equipment. *Id*. at ¶¶ 6-7, 27. AFCO knew when it hired Diedrich that he had carried out some duties for Mitek at Mitek's Illinois office. Doc. 38 at 4. After joining AFCO, Diedrich misappropriated Mitek's trade secrets by contacting EVR and asking it to sell AFCO the same DSP amplifier that it had made for Mitek. Doc. 1 at ¶ 33. As a result, AFCO can now "easily create a competing product which ha[s] features identical to the MTX prototype" using the trade secrets and confidential information to which Diedrich was exposed. *Id*. at ¶ 34.

Diedrich currently works for AFCO from his home in Wisconsin, developing products intended for the 12-volt specialists and powersports markets and other products that compete with Mitek products. *Id*. at ¶ 44; Doc. 38 at 6. Although AFCO's principal place of business is in Tennessee, it carries out some business activities in Illinois. Doc. 1 at ¶ 11. Specifically, AFCO sells products in Illinois; makes its products available to Illinois consumers; contracts with Illinois sales representatives, who in turn solicit Illinois retailers to buy AFCO products directly from AFCO; and designates "authorized retailers," which customers can locate using an interactive feature on AFCO's website. Doc. 38 at 1-2. AFCO hopes to increase its representatives' sales in Illinois by ten to twenty percent this year, and has directed at least one of those representatives to "aggressively pursue prospects" for increasing sales in the 12-volt specialists and powersports markets. *Id*. at 2. AFCO and its agents extend credit to retailers, set

prices, educate and direct sales representatives, and distribute promotional material to retailers in Illinois.  *Id*. at 2-3.

## Discussion

I.  **Personal Jurisdiction over AFCO**

"In a federal question case such as this one, a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant."  *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010).  "Because the [DTSA] does not have a special federal rule for personal jurisdiction," the court must "look to the law of the forum for the governing rule."  *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014); *see also KM Enterprises, Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 723 (7th Cir. 2013) (describing "the mechanics for asserting personal jurisdiction in federal court" under Rule 4(k)); *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016) ("When a federal court's subject-matter jurisdiction is based on a federal question, the court's exercise of personal jurisdiction must be both authorized by the forum State's long-arm statute and in accordance with the Due Process Clause of the Fourteenth Amendment."); *Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691, 706 (N.D. Ill. 2017) ("The Defend Trade Secrets Act does not have nationwide service of process that would confer personal jurisdiction over all Defendants, therefore, the Court may exercise personal jurisdiction over Defendants only if personal jurisdiction would be proper in an Illinois court.").  The Illinois long-arm statute allows for the exercise of "jurisdiction to the limit set by the Due Process Clauses of the Constitution."  *Noboa v. Barcelo Corporacion Empresarial, SA*, 812 F.3d 571, 572 (7th Cir. 2016); *see* 735 ILCS 5/2-209(c) ("A court may … exercise jurisdiction on any

4

other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."). Accordingly, this court must determine "whether the exercise of personal jurisdiction [over AFCO] would violate federal due process." *Mobile Anesthesiologists*, 623 F.3d at 443 (citations omitted).

"Under the Supreme Court's well-established interpretation of the Fourteenth Amendment's due process clause, a defendant is subject to personal jurisdiction in a particular state only if the defendant had certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Ibid.* (internal quotation marks omitted). The Supreme Court has "framed the constitutional inquiry in terms of whether the defendant purposefully avails itself of the benefits and protections of conducting activities in the forum state." *Mobile Anesthesiologists*, 623 F.3d at 444 (internal quotation marks omitted). To be subject to personal jurisdiction, "[t]he defendant's contacts must not be merely random, fortuitous, or attenuated; rather, the 'defendant's conduct and connection with the forum state' must be such that it should 'reasonably anticipate being haled into court there.'" *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)).

"Personal jurisdiction can be general or specific, depending on the extent of the defendant's contacts." *Mobile Anesthesiologists*, 623 F.3d at 444; *see also Daimler AG v. Bauman*, 571 U.S. 117, 126-28 (2014). Only specific jurisdiction need be considered here, as Mitek does not contend that AFCO is subject to general jurisdiction in Illinois. Doc. 38 at 4.

"Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-

5

related activities. The exercise of specific jurisdiction must also comport with traditional notions of fair play and substantial justice." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (internal quotation marks and citations omitted); *see also Advanced Tactical*, 751 F.3d at 800-01. When assessing specific jurisdiction, the "relevant contacts" are "the defendant's *suit-related* conduct," which "must create a substantial connection with the forum State." *Advanced Tactical*, 751 F.3d at 801 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)) (internal quotation marks omitted). "The mere fact that [the defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction. Furthermore, the relation between the defendant and the forum must arise out of contacts that the defendant *himself* creates with the forum." *Ibid.* (quoting *Walden*, 571 U.S. at 291) (internal quotation marks and alterations omitted). In other words, "the plaintiff cannot be the only link between the defendant and the forum." *Id*. at 802 (quoting *Walden*, 571 U.S. at 285).

Mitek argues that AFCO's Illinois contacts satisfy this standard in two respects, which are addressed in turn.

### A. Whether Specific Jurisdiction Arises from AFCO's Purposefully Availing Itself of the Privilege of Conducting Business in Illinois

Mitek contends that AFCO is subject to specific jurisdiction because it purposefully availed itself of the privilege of conducting business in Illinois by "intentionally serv[ing] and target[ing]" Illinois consumers. Doc. 38 at 4-5. AFCO did so, Mitek maintains, by (1) "[c]ontinuously selling products in Illinois since at least 2000," (2) "[e]ngaging sales representatives in Illinois to promote the sale of its products in Illinois," (3) "[s]etting goals for such representatives to increase sales in Illinois and holding such representatives accountable for meeting such goals," (4) "[e]stablishing relationships with at least 13 authorized retailers in Illinois and disseminating kiosks and other materials to promote in-store marketing of its

6

products," and (5) "[e]xtending credit to retailers in Illinois on approximately 19 occasions since 2012." *Id*. at 5.

True enough, by selling and directing others to sell its products in Illinois, AFCO purposefully availed itself of the privilege of doing business in Illinois. *See Daimler*, 571 U.S. at 135 n.13 ("[A] corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there."); *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 429 (7th Cir. 2010) ("GoDaddy purposefully availed itself of the Illinois market for its services through its deliberate and continuous exploitation of that market."); *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 758 (7th Cir. 2010) (same, where the defendant "knowingly … d[id] business with Illinois residents"). "For the court to exercise specific jurisdiction over [AFCO]," however, "[Mitek's] claims must arise out of [AFCO's] contacts with Illinois." *Hemi Grp.*, 622 F.3d at 759. That requirement demands a causal connection between AFCO's sales activities in Illinois, on the one hand, and the injury Mitek suffered from the breach of Diedrich's contract and misappropriation of its trade secrets, on the other. *See Felland*, 682 F.3d at 676-77.

Mitek submits that its injuries arose out of AFCO's Illinois sales because the products that AFCO sold "benefit[ted] from AFCO's misappropriation of Mitek's trade secrets and the confidential information Diedrich acquired in his employment." Doc. 38 at 6. That submission finds no support in the record. Mitek alleges that Diedrich contacted EVR about selling AFCO a DSP amplifier and enabled AFCO to produce such an amplifier incorporating Mitek's trade secrets and confidential information. Doc. 1 at ¶¶ 33-34, 60, 78. Mitek has not alleged, however, that AFCO has in fact *created* a product that incorporates that amplifier; more to the point, Mitek has not alleged that any such AFCO product has been *sold* in Illinois. Nor does Mitek plead any other facts showing how the products that AFCO has sold in Illinois

"benefitted" from the misappropriation of the DSP amplifier-related materials or gave rise to a misappropriation-related injury. Given the disconnect between the allegedly misappropriated trade secrets and the products that AFCO is alleged to have sold in Illinois, AFCO cannot be subject to personal jurisdiction in Illinois on account of its Illinois sales. *See Advanced Tactical*, 751 F.3d at 801 (holding that the court lacked specific jurisdiction over a trademark infringement defendant, even though the defendant "fulfilled a few orders after putting the allegedly infringing message on its website and in emails," where the plaintiff "provide[d] no evidence that those sales had any connection with th[e] litigation"); *KM Enterprises*, 725 F.3d at 733 (holding that there was no personal jurisdiction based on the defendant's product sales in Illinois where the plaintiff's "claims center on a patent infringement lawsuit in Minnesota and alleged bid-rigging in states other than Illinois," and thus had "nothing to do with [the defendant's] six sales in … Illinois"); *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1361-62, 1365 (Fed. Cir. 2012) (holding that there was no specific jurisdiction based on the defendants' product shipments to Wyoming where the plaintiff "did not allege or otherwise assert that its infringement claims arose from or were otherwise related to" the shipped products and failed to submit "evidence that the shipments included infringing products").

In the alternative, Mitek attempts to base specific jurisdiction over AFCO on its allegation that AFCO "advertis[es] its authorized retailers to customers in Illinois through an interactive feature on its website." Doc. 38 at 5. Governing precedent holds that an interactive website accessible to Illinois residents, without more, does not create personal jurisdiction in Illinois. *See Advanced Tactical*, 751 F.3d at 803 ("Having an 'interactive website' (which hardly rules out anything in 2014) should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible."); *uBID*, 623 F.3d at 431 & n.3

("Without [more], the mere fact that the defendant allegedly caused harm by conducting business or advertising over the Internet is not adequate to establish jurisdiction in the plaintiff's chosen forum state … even if the website is highly interactive."). And Mitek does not allege any additional facts that show "how any interactivity of the website here affected the alleged" misappropriation or establish any connection between AFCO's authorized retailers and this case. *Advanced Tactical*, 751 F.3d at 803. It follows that this court cannot exercise personal jurisdiction over AFCO by virtue of its interactive website.

### B. Whether Specific Jurisdiction Arises from AFCO's Expressly Aiming Its Conduct at Illinois

Mitek next contends that AFCO is subject to specific jurisdiction because it "expressly aimed its conduct at Illinois and knew that its effects would be felt in Illinois through its knowledge that Mitek was from Illinois and that Diedrich worked for Mitek in Illinois." Doc. 38 at 5. In *Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010), the Seventh Circuit held that a defendant in an intentional tort case purposefully directs its activities at the forum state where it engages in "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Id*. at 703.

Four years later, the Supreme Court in *Walden* held that a Nevada court could not exercise personal jurisdiction over an "out-of-state intentional tortfeasor" even though the tortfeasor "allegedly directed his conduct at plaintiffs whom he knew had Nevada connections" and the plaintiffs "suffered the 'injury' caused by petitioner's allegedly tortious conduct … while they were residing in" Nevada. 571 U.S. at 286, 289. The Court grounded its holding on two bedrock principles of personal jurisdiction. "First," the Court explained, "the relationship [between the defendant and the forum] must arise out of contacts that the defendant *himself*

creates with the forum State," not "contacts between the plaintiff (or third parties) and the forum State." *Id*. at 284 (internal quotation marks omitted). "Second," the Court continued, the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. at 285. The Court thus concluded: "[I]t is the defendant's conduct that must form the necessary connection with the forum State … . [A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id*. at 285-86.

It is unclear whether and, if so, to what extent the three-part test from *Tamburo* survived *Walden*. Although the Seventh Circuit has not expressly abandoned the test, it recognized that at least some of its precedents involving specific jurisdiction over defendants alleged to have committed intentional torts "can no longer be considered authoritative" in light of *Walden*. *Advanced Tactical*, 751 F.3d at 802. The court will therefore consider not only the three inquiries articulated in *Tamburo*, but also the limits placed on personal jurisdiction in *Walden*. Two recent precedents applying *Walden* clarify those limits.

In *Advanced Tactical Ordnance Systems*, an Indiana company sued a California-based competitor for trademark infringement and trade secret misappropriation after the defendant bought and advertised specialized projectiles like those the plaintiff manufactured and sold. 751 F.3d at 798-99. The plaintiff argued that the defendant was subject to personal jurisdiction in Indiana because it knew that the plaintiff "was an Indiana company and could foresee that its misleading emails and sales would harm [the plaintiff] in Indiana." *Id*. at 802. The Seventh Circuit disagreed, reasoning that "after *Walden* there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum.'" *Ibid*. (quoting *Walden*, 571 U.S. at 285). Likewise, in *Ariel Investments, LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520 (7th Cir. 2018),

10

a trademark infringement plaintiff argued that a Florida-based defendant was subject to specific jurisdiction in Illinois because it "had set out to injure [the plaintiff], knowing that it is located in Illinois," and had "aimed its actions" at Illinois. *Id*. at 522. The Seventh Circuit disagreed, reasoning that the plaintiff had raised "exactly the sort of allegation the Justices deemed inadequate in *Walden*." *Ibid*.

It is against this backdrop that the court must evaluate Mitek's contention that AFCO purposefully directed its activities at Illinois by "[1] expressly aim[ing] its conduct at Illinois and [2] kn[owing] that its effects would be felt in Illinois [3] through its knowledge that Mitek was from Illinois and [4] that Diedrich worked for Mitek in Illinois." Doc. 38 at 5. The first three components of Mitek's argument miss the mark because, as the Seventh Circuit explained in *Advanced Tactical* and *Ariel Investments*, they describe the "defendant's relationship with [the] plaintiff," *Walden*, 571 U.S. at 286, not with the forum.

The fourth component of Mitek's argument—that AFCO "kn[ew] … that Diedrich worked for Mitek in Illinois," Doc. 38 at 5—falls short because it describes AFCO's "relationship with a … third party," not with Illinois. *Walden*, 571 U.S. at 286. As noted, "[i]t is the defendant—not … third parties—that must create the contacts in the forum state." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 913 (7th Cir. 2015); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[U]nilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); *Advanced Tactical*, 751 F.3d at 801 ("Contacts between … third parties and the forum do not satisfy th[e] ['minimum contacts'] requirement."). It was Diedrich, not AFCO, who signed a contract with Mitek that was to be performed in part in Illinois and who worked in Illinois under the contract.

11

Doc. 38 at 6. It follows that *Diedrich's* performance of duties for Mitek in Illinois cannot support the exercise of specific jurisdiction over *AFCO* in Illinois.

Although AFCO allegedly interfered with Diedrich's employment contract, the acts constituting the interference—hiring a Wisconsin resident to work in Wisconsin and receiving trade secrets in Tennessee, Doc. 1 at ¶¶ 4, 6, 44, 84-87—are not alleged to have taken place in Illinois. Nor are the alleged acts supporting Mitek's misappropriation claims against AFCO. Although Diedrich acquired Mitek's trade secrets in Illinois and Arizona, he did so in the course of a legitimate employment relationship and "[p]ursuant to his job duties." *Id*. at ¶ 26; *see also id*. at ¶ 47. He later (allegedly) misappropriated those trade secrets to AFCO's benefit by soliciting a DSP amplifier from EVR, but Mitek does not claim that either party to that conversation was in Illinois at the time. *Id*. at ¶¶ 33, 46, 60, 78. These alleged facts accordingly do not give rise to specific jurisdiction over AFCO in Illinois. *See Gold Medal Prod. Co. v. Bell Flavors & Fragrances, Inc.*, 2017 WL 1365798, at *8 (S.D. Ohio Apr. 14, 2017) (finding no personal jurisdiction where the plaintiff's former employee "acquired trade secret information in [the forum state] by legitimate means" and was not alleged to have unlawfully conveyed the trade secrets to the defendant until he left the forum state); *Drayton Enters., L.L.C. v. Dunker*, 142 F. Supp. 2d 1177, 1184 (D.N.D. 2001) (same).

Mitek also contends that AFCO purposefully directed its activities at Illinois "through its deliberate sales of its products—which are alleged to be tainted through trade secrets misappropriated in violation of the DTSA and Diedrich's confidentiality agreement—in Illinois," and by directing Diedrich to work on products aimed at the 12-volt specialists and powersports markets. Doc. 38 at 5-6. This argument is almost identical to the "purposeful availment" argument addressed and rejected above, and it fares no better when viewed through the lens of

12

purposeful direction. As noted, Mitek does not allege facts showing that the products AFCO sold in Illinois were, in fact, "tainted," because it has not explained how any injury to Mitek resulting from AFCO's sales in Illinois relate to Diedrich's alleged disclosure of Mitek's trade secrets. Nor does Mitek allege that AFCO products designed for the 12-volt specialists and powersports markets in Illinois have caused Mitek's misappropriation-related injuries. Therefore, Mitek has not adequately alleged that its injuries "ar[ose] from [AFCO's] forum-related activities." *Felland*, 682 F.3d at 673.

In sum, because Mitek fails to identify any "contacts that [AFCO] *[it]self* create[d] with the forum State" that bear the necessary relationship to its claims in this suit, it has not carried its burden to show that AFCO is subject to specific jurisdiction in Illinois. *Walden*, 571 U.S. at 284.

## II. Dismissal of Diedrich under Rule 12(b)(7)

Defendants contend that because AFCO is a necessary party under Rule 19 without whom the suit cannot rightfully proceed, the dismissal of Mitek's claims against AFCO under Rule 12(b)(2) requires that the claims against Diedrich be dismissed as well under Rule 12(b)(7). Doc. 19 at 13-14; Doc. 23-2 at 6-7. Mitek does not address the merits of this argument. Doc. 37 at 14 (arguing that because "there is personal jurisdiction over AFCO," Defendants' "arguments under Rule 12(b)(7) and 19 … are moot"). Accordingly, Mitek has forfeited any argument against dismissal under Rule 12(b)(7). *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a

complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.") (internal quotation marks omitted).

**Conclusion**

For the foregoing reasons, Defendants' motions to dismiss are granted. Given the basis for the dismissals—AFCO under Rule 12(b)(2), and Diedrich under Rule 12(b)(7)—the dismissals are without prejudice to Mitek bringing suit in an appropriate forum, subject of course to any applicable defenses. *See Sikhs for Justice v. Badal*, 736 F.3d 743, 751 (7th Cir. 2013) (Rule 12(b)(2)); *N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1284 (10th Cir. 2012) (Rule 12(b)(7)).

October 18, 2018

United States District Judge